The VIRGINIA HOSPITAL ASSOCIATION, Plaintiff-Appellant,

v.

Gerald L. BALILES, Governor of Virginia; Eva S. Teig, Secretary of Human Resources of Commonwealth of Virginia; Ray T. Sorrell, Director, Medical Assistance Service; Bette O. Kanter, Member State Board of Medical Assistance Services; Joseph M. Teefy, Member State Board Medical Assistance Services; R. Michael Berryman, Member State Bar of Medical Assistance Services; Ford Tucker Johnson, Sr., D.D.S. Member, State Board of Medical Assistance Services; A. Epes, Jr., Medical Doctor; Ruth Hanft, Member State Board of Medical Assistance Services; Patricia E. Sloan, R.N., Ed.D. Member, State Board of Medical Assistance Services; Jordan H. Goldman, Member State Board of Medical Services; Robert N. Lambeth, Jr., Member State Board of Medical Assistance Service; Elsa A. Porter, Member State Board of Medical Assistance Services; John N. Simpson, Member State Board of Medical Assistance Services, Defendants-Appellees.

No. 86–2171.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1987.

Decided Oct. 13, 1987.

Martin Andrew Donlan, Jr. (John William Crews, Peter M. Mellette, Crews & Hancock, Richmond, Va., on brief), for plaintiff-appellant.

Roger Lewis Chaffe, Sr. Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen. of Virginia, R. Claire Guthrie, Deputy Atty. Gen., Pamela M. Reed, Asst. Atty. Gen., Richmond, Va., on brief), for defendants-appellees.

Before WIDENER, PHILLIPS, and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Plaintiff Virginia Hospital Association ("VHA") appeals from the district court's grant of summary judgment in favor of the defendant officials of the Commonwealth of Virginia in this case challenging the administration of Virginia's Medicaid program. The district court granted summary judgment for the defendants on the ground that VHA was collaterally estopped to litigate the issues raised in its complaint. Because we believe that application of collateral estoppel was improper under the circumstances of this case, we reverse the judgment of the district court and remand this action for further proceedings.

## I.

VHA is a nonprofit association of public and private hospitals in Virginia. We gather from the record in this case that VHA's function is to represent and seek to advance the interests of its members in various matters of concern to Virginia hospitals. VHA brought this action to challenge Virginia's procedures for reimbursing the costs that Virginia hospitals incur through their participation in the Medicaid program. VHA's complaint alleged that Virginia's Medicaid reimbursement procedures violated the requirements of the Social Security Act and the due process clause of the fourteenth amendment.

The defendants moved for dismissal of the complaint, or, alternatively, for summa-

ry judgment. Although the motion was based on a number of alternative grounds,[1] the defendants' primary contention was that VHA was collaterally estopped to litigate the issues raised in its complaint. The district court granted summary judgment for the defendants on the ground that VHA was collaterally estopped by the court's prior decision in *Mary Washington Hospital, Inc. v. Fisher*, 635 F.Supp. 891 (E.D.Va.1985). This appeal followed.

## II.

In order to understand the issues presented by this appeal, some discussion of the Medicaid program in Virginia is necessary. Medicaid is a cooperative federal-state program that furnishes medical care to needy persons. States, such as Virginia, that participate in the Medicaid program reimburse the costs incurred by hospitals that provide health care to Medicaid recipients. In turn, the federal government reimburses part of the costs that participating states incur under the program. In order to qualify for such reimbursement, states participating in the Medicaid program must comply with federal laws and regulations.

In 1981, Congress amended the hospital reimbursement provisions of the federal Medicaid statute as part of the Omnibus Budget Reconciliation Act.[2] The statute now provides that each state participating in the Medicaid program must reimburse hospitals at rates set by the state that

> are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that

individuals eligible for medical assistance have reasonable access ... to inpatient hospital services of adequate quality....

42 U.S.C. § 1396a(a)(13)(A) (1982).

In response to this statutory amendment, Virginia changed its procedures for reimbursement of hospitals under the Medicaid program. Virginia adopted a prospective reimbursement system based on annual reimbursement ceiling rates. The new program sets reimbursement ceiling rates for peer groups of hospitals based on the number of beds per hospital and the location of each hospital in either a rural or an urban area. Under this program, no Virginia hospital participating in the Medicaid program can receive reimbursement at a rate higher than its reimbursement ceiling rate. The initial reimbursement ceiling rates were based on hospital cost data from the year 1981, and these rates were adjusted by a "reimbursement escalator" when the new program went into effect on July 1, 1982. Under Virginia's program, reimbursement ceiling rates are increased each year through application of the reimbursement escalator. The reimbursement escalator used in the program is the consumer price index.

Virginia's new Medicaid reimbursement plan was challenged in *Mary Washington Hospital, Inc. v. Fisher*, 635 F.Supp. 891 (E.D.Va.1985), in which a single hospital sued officials administering Virginia's Medicaid program. The hospital alleged that Virginia's reimbursement plan violated the requirements of 42 U.S.C. § 1396a(a)(13)(A) (1982) in that it (1) failed to set reimbursement rates that were reasonable and adequate to meet the costs incurred by efficiently and economically operated hospitals; and (2) failed to set reimbursement rates that would ensure

---

[1]. In addition to their claim of collateral estoppel, the defendants argued below that they were entitled to dismissal of the complaint or to summary judgment because VHA lacked standing to bring this suit, and because VHA's claims were barred by the eleventh amendment. The district court did not address these arguments, and the parties alluded to them only briefly in their briefs to this court. Although we feel that it would be inappropriate for us to consider these arguments on the existing record, it would cer-

tainly be appropriate for the district court to address them on remand.

[2]. Prior to this amendment, federal law required states participating in the Medicaid program to reimburse hospitals the "reasonable cost" of services they rendered to Medicaid recipients. This system of reimbursement operated retrospectively, with hospitals settling the reasonable costs they could collect at the end of each year.

Medicaid recipients reasonable access to inpatient hospital services of adequate quality. Additionally, Mary Washington Hospital challenged Virginia's use of the consumer price index as its reimbursement escalator under the plan, on the ground that hospital costs could be expected to increase at a rate in excess of the rate of inflation, thus rendering hospital reimbursements under Virginia's plan increasingly inadequate. Finally, the hospital claimed that Virginia's plan did not comply with federal regulations requiring each state participating in the Medicaid program to provide an appeals procedure allowing individual hospitals to seek administrative review of their reimbursement rates. *See* 42 C.F.R. § 447.253(c) (1986).

The district court in *Mary Washington Hospital* upheld Virginia's Medicaid reimbursement plan in its entirety, except for the plan's appeals provisions. Specifically, the court found that Virginia's reimbursement rates were reasonable and adequate to meet the costs incurred by efficiently and economically operated hospitals. *See Mary Washington Hospital*, 635 F.Supp. at 900–01. Additionally, the court concluded that Virginia's reimbursement rates would ensure Medicaid recipients reasonable access to inpatient hospital services of adequate quality. *See id.* at 902. The court declined to resolve the hospital's challenge to Virginia's use of the consumer price index as its reimbursement escalator under the plan, on the ground that this issue did not, at that time, present a justiciable controversy. *See id.* at 901.

The *Mary Washington Hospital* court ruled that Virginia's procedures for hospitals to appeal their reimbursement rates were inadequate under federal law. The defendants were allowed sixty days within which to formulate new appeals procedures, and the new procedures were presented to the court for review. The court held that the new procedures were appropriate and meaningful appeals procedures as required by federal law. The

decision in *Mary Washington Hospital* was never appealed.

## III.

The issues raised by VHA in this case are quite similar to those presented in *Mary Washington Hospital*. For example, VHA alleges that the reimbursement rates under Virginia's plan do not comply with the requirements of federal law, in that they do not reasonably and adequately meet the costs incurred by efficiently and economically operated hospitals. Additionally, VHA challenges Virginia's use of the consumer price index as its reimbursement escalator under the plan, alleging that use of this reimbursement escalator will result in increasingly inadequate reimbursement rates in the future. Finally, VHA challenges the adequacy of Virginia's procedures for individual hospitals to appeal reimbursement rates.

■ The district court granted summary judgment for the defendants in this case on the ground that VHA was collaterally estopped to litigate the issues raised in its complaint, because those issues had previously been decided in the *Mary Washington Hospital* litigation. We think that the district court erred in applying collateral estoppel under the circumstances of this case, because VHA, which was not a party in *Mary Washington Hospital*, could not be bound by the judgment rendered in that suit under collateral estoppel principles.[3]

■ The doctrine of collateral estoppel precludes relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate. *See, e.g., Thomas v. General Services Administration*, 794 F.2d 661, 664 (Fed.Cir.1986); *National Labor Relations Board v. Master Slack and/or Master Trousers Corp.*, 773 F.2d 77, 81 (6th Cir. 1985); *Greenblatt v. Drexel Burnham*

---

**3.** Neither the district court nor the parties addressed the possible stare decisis effect of the judgment in *Mary Washington Hospital*. We express no opinion on this issue, since it was neither raised nor decided below.

*Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir.1985). Collateral estoppel ordinarily applies only against persons who were parties to the prior suit, because, as a general rule, nonparties will not have had a full and fair opportunity to litigate the issues raised in the previous action. *See, e.g., Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) (due process prohibits application of collateral estoppel against persons who did not appear in prior action, because such persons have had no opportunity to present evidence and arguments).

■ Under some circumstances, however, nonparties can be precluded from relitigating issues determined in a prior suit. The Supreme Court considered the application of collateral estoppel against a person who was not a party to the previous litigation in *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). The court first observed that applying collateral estoppel against parties to a prior suit can serve several important interests: preventing the expense and vexation of multiple lawsuits, conserving judicial resources, and minimizing the possibility of inconsistent decisions. *Id.* at 153–54, 99 S.Ct. at 973–74. The court then stated:

> These interests are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved.... [T]he persons for whose benefit and at whose direction a cause of action is litigated cannot be said to be "strangers to the cause.... [O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own ... is as much

bound ... as he would be if he had been a party to the record."

*Id.* at 154, 99 S.Ct. at 974 (quoting *Souffront v. Compagnie des Sucreries*, 217 U.S. 475, 486–87, 30 S.Ct. 608, 612–13, 54 L.Ed. 846 (1910)).

From *Montana v. United States*, we derive the rule that a person who was not a party to a prior suit can be collaterally estopped by the judgment rendered in that suit if (1) the person had a direct financial or proprietary interest in the prior litigation; and (2) the person assumed control over the prior litigation. *See, e.g., Alman v. Danin*, 801 F.2d 1, 4–5 (1st Cir.1986); 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.411[6], at 445 (2d ed. 1984). This rule is consistent with the principle that collateral estoppel can be applied only against persons who had a full and fair opportunity to litigate the issues determined in the prior suit. If a person has a direct financial or proprietary interest in litigation, he will have an incentive to litigate the issues raised in the suit fully. If the person also has control of the litigation, he will have the ability to ensure that the issues are fully litigated.

The resolution of this appeal, then, depends upon whether VHA had a direct financial or proprietary interest in the *Mary Washington Hospital* litigation, and whether VHA assumed control over that litigation.[4] Based on the record in this case, we must answer both of these inquiries negatively.

Our review of the record indicates that VHA had no direct financial or proprietary interest in the outcome of the *Mary Washington Hospital* litigation. Because VHA is not a hospital or health care provider, it could not have been directly affected by the district court's determinations concern-

---

4. The district court and the parties addressed the question whether collateral estoppel could be applied against VHA in terms of whether VHA was in privity with Mary Washington Hospital in the prior suit. We think, however, that the collateral estoppel issue is better addressed in terms of the interest and control factors discussed in the text of this opinion. In the con-

text of this case, we do not find privity to be a helpful concept. *See Montana v. United States*, 440 U.S. at 154 n. 5, 99 S.Ct. at 974 n. 5 ("Although the term 'privies' has been used on occasion to denominate nonparties who control litigation, ... this usage has been criticized as conclusory and analytically unsound.").

ing the adequacy of Virginia's Medicaid reimbursement program in that case. As an advocate of the interests of its member hospitals, VHA presumably wished to see the Medicaid reimbursement plan declared invalid, since such a determination could benefit the hospitals participating in the Medicaid program. This type of interest in the *Mary Washington Hospital* litigation would not, however, be sufficient to support application of collateral estoppel against VHA in this case. As Professor Moore observes, a nonparty's "academic interest in the determination of a question of law [in a prior suit], or even a substantial interest in establishing favorable precedent under the doctrine of stare decisis" cannot preclude the nonparty from later relitigating issues determined in the prior suit. 1B *Moore's Federal Practice* ¶ 0.411[6], at 446.

Furthermore, the record in this case cannot support a finding that VHA exercised sufficient control over the *Mary Washington Hospital* litigation to be bound by the judgment in that case under collateral estoppel principles. Although the record reflects some participation by VHA in the *Mary Washington Hospital* suit, this participation did not rise to the level of control necessary to support application of collateral estoppel against VHA in this case. As leading commentators have observed:

> To have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action. He must also have control over the opportunity to obtain [appellate] review.... It is not sufficient, however, that the person merely contributed funds or advice in support of the party, supplied counsel to the party, or appeared as *amicus curiae*.

*Restatement (Second) of Judgments* § 39 comment c, at 384 (1982). Moreover, a nonparty is not deemed to have control over litigation simply because he procures witnesses or evidence for a party to the suit. *See* 1B *Moore's Federal Practice* ¶ 0.411[6], at 457.

The record in this case indicates that VHA participated in the *Mary Washington Hospital* litigation in a number of ways. For example, VHA supplied Mary Washington Hospital with certain survey reports to be used as evidence at trial. These reports indicated that many hospitals were receiving inadequate reimbursement under Virginia's Medicaid reimbursement program. Additionally, VHA's representatives attended various conferences before the district court concerning the formulation of adequate appeals procedures under the Medicaid program. Counsel for VHA attended the deposition of Virginia's Medicaid program director and asked one question at the deposition. Finally, VHA appeared before the Health Care Financing Administration to oppose administrative approval of the appeals procedures proposed by Virginia's Medicaid program officials.

In our view, these activities on the part of VHA are not sufficient to support a finding that VHA exercised control over the *Mary Washington Hospital* litigation. There is no indication in the record that VHA had any effective choice as to the legal theories and proofs advanced in the prior suit, and there is no suggestion that VHA had control over whether or not to appeal the judgment in that case. VHA's participation in the earlier litigation by furnishing survey reports that were used as evidence, participating in a single deposition in a very limited manner, and attending conferences with the district court, did not rise to the level of control necessary to support application of collateral estoppel. Finally, VHA's appearance before the Health Care Financing Administration did not constitute participation in the *Mary Washington Hospital* suit, but rather participation in the administrative process for review of Virginia's Medicaid appeals procedures.

We conclude that the district court improperly applied collateral estoppel to preclude VHA from litigating the issues raised in its complaint. Application of collateral estoppel was improper because VHA neither controlled nor had any direct financial

or proprietary interest in the earlier *Mary Washington Hospital* litigation. Because VHA was not collaterally estopped by the judgment in *Mary Washington Hospital*, we reverse the district court's grant of summary judgment for the defendants and remand this case for further proceedings.

REVERSED AND REMANDED.

JAMES DICKSON PHILLIPS, Circuit Judge, concurring in part and dissenting in part:

I regret that I cannot join in the majority's disposition of this appeal. In many respects the case is an unexceptional one and the critical substantive issue a narrow one whose resolution by the majority does not finally resolve the case. But the issue, though narrow and not dispositive in this case, is, for broader precedential purposes, an important one which, for a number of reasons, I think should not be resolved summarily on the present record, as the majority here does.

The substantive issue concerns the circumstances under which associational entities and their members should be precluded from relitigating issues (or whole claims) previously litigated by one or the other. The majority opinion, applying traditional non-party preclusion principles ("privity"), has held the associational plaintiff, VHA, not precluded by its earlier participation in an action by one of its members.

This substantive holding is effected by outright reversal of a district court summary judgment finding preclusion. The practical effect of this decision to reverse outright is to award partial summary judgment rejecting the preclusion defense in favor of a party, VHA, which had neither moved for it in the district court nor sought it as appellant should it prevail on this appeal. In both courts VHA has confined its arguments to denying the state defendants' entitlement, as sole movants for summary judgment, to that relief, on the basis that there were on the present record genuine issues of material fact respecting, *inter*

*alia,* the extent of VHA's participation, control and interest in the earlier action.

Of course there is no question of our power in appropriate cases to grant such appellate relief despite its not having been sought by the appellant at either level. Just as a district court may properly grant summary judgment *sua sponte* to a non-movant (whether or not his adversary has moved for summary judgment), so may we in appropriate cases. *See generally* 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 2720, pp. 28–35. But for obvious reasons of procedural fairness and regularity, the circumstances under which we should do so are rare, even if the relief may be technically warranted on the summary judgment record as composed solely on the appellee's motion. *See, e.g., E.C. Ernst, Inc. v. General Motors Corp.,* 537 F.2d 105 (5th Cir.1976). I do not believe those circumstances are present here, and it is for that reason that I dissent from the decision to award partial summary judgment, rejecting the preclusion defense, to VHA.

In the first place, while I agree with the majority that summary judgment for the state defendants was not proper on the present record, neither do I think it is warranted for VHA. For the same reason that genuine issues of material fact respecting the degree of VHA's participation and control in the earlier action made summary judgment inappropriate for the defendants, so it is inappropriate on the present record in favor of VHA. That there was an appreciable measure of participation is undisputed, as is the fact of the associational relationship and mutual interests flowing from it.

The genuineness of the dispute thereby created stems from the intrinsic difficulty and still emerging state of preclusion doctrine in this type case. Successive actions by associational entities and their members present particularly difficult preclusion issues, both factual and legal. The controlling principles are still emerging as this type of entity—labor unions, trade associa-

tions, special interest groups—have proliferated in recent years as parties to litigation. *See generally* 18 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction and Related Matters* § 4456.

The possibilities that litigation by these entities and their memberships present for contriving successive, repetitive claims (or defenses) free of the constraints of traditional res judicata "privity" requirements are obvious. For this reason, some courts may now understandably have relaxed to some extent the traditional "participation and control plus interest" requirements for binding non-parties when associational entities are involved. *See id.* at p. 492. Indeed, some courts, obviously concerned about the ease with which actual control and interest can be masked in associational litigation, have taken a completely different approach, finding preclusion on theories of virtual representation of a current party in the prior action rather than, or in supplementation of, participation and control notions. *See id.* § 4457. So far as I can tell, our court has not had the occasion to address the special problem in a definitive way.

I do not of course suggest that preclusion on either basis is now demonstrably warranted here; only that the possibility is sufficiently indicated to warrant further development of the record—both to guard against possible substantive injustice in the present case and for precedential purposes. Even where summary judgment is technically appropriate—as I think it is not here—courts (particularly appellate courts not asked for the relief) have discretion to withhold it on grounds of practicality and fairness. *Forest Hills Early Learning Center, Inc. v. Lukhard,* 728 F.2d 230, 245 (4th Cir.1984); *see also United States v. Bachman,* 601 F.Supp. 1537 (D.C.Wis. 1985). Particularly where, as here, the controlling legal principles are new or newly emerging, discretion dictates caution in making a summary disposition on what may be an incomplete development of the full factual record. *Cf. Shull v. Pilot Life*

*Insurance Co.,* 313 F.2d 445, 447 (5th Cir. 1963) (admonishing caution in granting motion to dismiss on pleading asserting new, novel theories).

Finally there is the consideration that the case must in any event now be remanded for further proceedings on all the other issues than preclusion. While the majority's concern for expeditious final resolution of all possible issues is understandable, little in terms of judicial economy would be lost by remanding the collateral estoppel issue for further proceedings. This seems particularly appropriate when one of the unresolved issues to be addressed on remand is that of VHA's standing to prosecute this claim. The standing issue is critically related to the collateral estoppel issue in ways that might well force VHA into somewhat conflicting positions on the nature and degree of the associational relationships here in issue. *Cf. Ethnic Employees of Library of Congress v. Boorstin,* 751 F.2d 1405, 1410 (1st Cir.1985) (relationship between preclusion and possibly representative nature of action noted). Under these circumstances, it seems to me particularly unwise and unsafe to cut off at this stage further development of the collateral estoppel issue. The principles of repose at stake are obviously of great importance, particularly in the associational litigation context.

For all these reasons, I dissent from the court's *sua sponte* award of summary judgment to VHA on the collateral estoppel defense. I would remand it for further proceedings along with the rest of the case.