**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DARRELL A. DRESSER,
Plaintiff-Appellant,

v.

W. MERIL BACKUS, JR.; RICHARD

No. 99-1924

BACKUS; BACKUS & ASSOCIATES,
INCORPORATED, a Maryland
Corporation; CHARLES W. FOSTER,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-99-296-JFM)

Argued: June 8, 2000

Decided: August 4, 2000

Before WILKINSON, Chief Judge, and WIDENER and
TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gove L. Allen, GOVE L. ALLEN, P.C., Mesa, Arizona,
for Appellant. George Brian Huckaby, ORTMAN, LOVE & HUCK-
ABY, Bethesda, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Darrell A. Dresser ("Dresser") appeals the order of the district court granting summary judgment to appellees W. Meril Backus, Jr., Richard S. Backus, and Backus & Associates, Inc. (collectively "the Backus defendants"), and Charles W. Foster. We affirm.

I.

The claims in this case arise from the operation of an insurance marketing business in which Dresser and Meril Backus were engaged. The underlying facts are set forth in detail in a previous opinion of this court. See Dresser v. Backus, 139 F.3d 888, 1998 WL 119987 (4th Cir. 1998) (per curiam) (unpublished table decision) (Dresser I). For purposes of this appeal, the relevant facts are these:

> In December 1982, Dresser joined W. Meril Backus in an insurance marketing effort designed to recruit insurance agents and brokers to sell life insurance products for particular insurance companies . . . .
>
> Dresser became ill in 1986, and Backus incorporated Universal Life Associates of Maryland ("ULA/MD") in August 1987. ULA/MD issued 300 shares of stock each to Dresser and Backus. In early 1989, Dresser assigned and transferred his 300 shares of ULA/MD stock to Marie Arient. Dresser and Arient married in Arizona the following month. After the couple separated in 1991, Dresser filed suit in Arizona state court seeking a divorce from Arient and the return of the ULA/MD stock. The suit also named ULA/MD and Backus, among others, as additional respondents.
>
> In early 1992, Arient transferred her 300 shares of ULA/MD stock to Backus. In July 1992, Dresser obtained

2

a default judgment against Arient in the divorce proceeding. However, the order dismissed with prejudice the claims against ULA/MD and Backus for lack of personal jurisdiction. Nevertheless, the Arizona state court awarded Dresser fifty percent of the stock in ULA/MD and all dividends or benefits paid thereon since September 1, 1991. The court's order was based on Dresser's allegation that he had not transferred the stock to Arient; but rather that he had placed title of the stock in Arient's name solely for estate planning purposes and that Arient had agreed to return the stock if the parties ever separated. At the time the underlying action was filed, Arient's motion for relief from the default judgment was pending in the Arizona state court. ULA/MD was dissolved in April 1992.

Id. at *1 (footnotes omitted).

In 1994, Dresser filed an action (Dresser I) against the Backus defendants, asserting claims for breach of fiduciary duty, misrepresentation, and conspiracy to defraud Dresser in connection with ULA/MD. A panel of this court affirmed the district court's grant of summary judgment to the Backus defendants "based on the conclusion that Dresser had unconditionally transferred his interest in the stock to Arient in 1989 and, therefore, lacked standing to bring [that] action." Id. This court also affirmed the district court's alternative conclusion, based on the district court's finding that Dresser made misrepresentations under oath during the Arizona state court proceedings, that the doctrine of unclean hands also barred Dresser from relief. See id. at *2.

In February 1999, Dresser filed this action based on essentially the same set of facts as Dresser I. In addition to naming the Backus defendants again, Dresser also sought relief against Foster, who served as counsel for the Backus defendants during Dresser I. In the second action, Dresser alleged that the Backus defendants and Foster engaged in a racketeering conspiracy designed to deprive him of the value of his shares and his dividends from ULA/MD in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). See 18 U.S.C.A. §§ 1961-1968 (West 1984 & Supp. 2000).

3

Foster and the Backus defendants filed what they styled "Defendants' motion to dismiss for failure to state a claim upon which relief can be granted; motion for judgment on the pleadings; and/or motion for summary judgment." J.A. 29. The district court treated the motion as one for summary judgment and granted it, finding that "as to [the Backus defendants], who were parties to the prior litigation, Dresser's claims are barred by the doctrine of res judicata." J.A. 163. With respect to Foster, the court found that "[a]lthough defendant Foster was not a party to that litigation, this court's findings, including its finding of `unclean hands' against Dresser, would, through the doctrine of collateral estoppel, bar any claim Dresser might have against Foster as well." J.A. 163.

II.

A.

Dresser contends that because the district court entered summary judgment in Dresser I based on its conclusion that Dresser lacked standing, its dismissal was for lack of subject matter jurisdiction and was not a decision on the merits. And, because the doctrine of res judicata requires that the prior decision be a final one upon the merits, Dresser argues that the doctrine of res judicata cannot apply, and that if Dresser I is to have any preclusive effect, it must come via the doctrine of collateral estoppel.

We begin by noting that federal, not state, principles guide our determination of whether we will grant preclusive effect to a prior federal judgment. See Shoup v. Bell & Howell Co. , 872 F.2d 1178, 1179 (4th Cir. 1989). Thus, in considering Dresser's contentions, we look to federal law regarding the doctrines of res judicata and collateral estoppel.

Res judicata, generally speaking, "bar[s] a second attempt to relitigate the same cause of action between the parties" to an earlier action, as well as any other claim or issue that could have been raised in the earlier action. United States v. Tatum, 943 F.2d 370, 381 (4th Cir. 1991); see also Adkins v. Allstate Ins. Co., 729 F.2d 974, 976 (4th Cir. 1984) (Res judicata operates to bind a party to the prior suit "not only as to every matter which was offered and received to sustain or defeat

4

the claim or demand, but as to any other admissible matter which might have been offered for that purpose." (internal quotation marks omitted)). The second action filed by Dresser against the Backus defendants is premised upon operative facts identical to those in Dresser I, and thus Dresser's RICO claims could have been raised in Dresser I. If res judicata applies, Dresser's action is barred as to the Backus defendants, but not necessarily Foster because the purpose of res judicata is to prevent the same parties-- or their privies -- to a prior action from rehashing claims that were (or could have been) resolved. See, e.g., Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n.5 (1979) ("Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action."). Res judicata applies when there is "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1473 (4th Cir. 1996) (internal quotation marks omitted). The only real issue here is whether the summary judgment order entered in Dresser I culminated in a judgment on the merits. We have recognized that, "[f]or purposes of res judicata, a summary judgment has always been considered a final disposition on the merits." Adkins, 729 F.2d at 976 n.3. In Dresser I, however, the district court disposed of the action based on the conclusion that Dresser lacked standing, which some courts view as akin to a dismissal for lack of jurisdiction and therefore not a judgment on the merits for purposes of res judicata. See, e.g., St. Pierre v. Dyer, 208 F.3d 394, 400 (2nd Cir. 2000) ("Our principal difficulty [with the district court's application of res judicata] is that the St. Pierre I summary judgment dismissed St. Pierre's original claims not on their merits but only for lack of Article III standing."). Dresser seizes on this logic, and argues that because the district court dismissed his original claims in Dresser I for lack of standing, Dresser I did not end in a judgment on the merits. Therefore, he contends that he should be permitted to bring the current action even though it is founded upon precisely the same set of facts.

However, even if Dresser is correct that Dresser I did not culminate in a judgment on the merits, rendering the doctrine of res judicata inapplicable, collateral estoppel may still apply."[A] jurisdictional dismissal that does not constitute a judgment on the merits so as to

5

completely bar further transactionally-related claims still operates to bar relitigation of issues actually decided by that former judgment." Goldsmith v. Mayor & City Council of Baltimore, 987 F.2d 1064, 1069 (4th Cir. 1993). Because we agree with Foster and the Backus defendants that collateral estoppel applies and ultimately bars this action, we need not determine whether the entry of summary judgment based upon a lack of standing prevents the operation of res judicata.

Dresser contends that collateral estoppel is inapplicable for two reasons: (1) the issues raised in Dresser I are unlike any of the issues raised in this action; and (2) he did not have a full and fair opportunity to litigate the issues in Dresser I. We disagree with both contentions.

Collateral estoppel, broadly speaking, prevents the relitigation of an issue of fact or law that was settled in a previous case. See Allen v. McCurry, 449 U.S. 90, 94 (1980). It is related to the doctrine of res judicata, but it "can be applied to narrower portions of an action than is the case for res judicata." Tatum, 943 F.2d at 382. Collateral estoppel "precludes relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." Virginia Hosp. Ass'n v. Baliles, 830 F.2d 1308, 1311 (4th Cir. 1987). In order to establish the applicability of collateral estoppel:

> the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998); see also Ramsay v. INS, 14 F.3d 206, 210 (4th Cir. 1994). Foster does not need to demonstrate that he is a "privy" to the Backus defendants to take advantage of the doctrine of collateral estoppel, as

6

he would if he were asserting res judicata. Rather, Foster must only demonstrate that Dresser "had a full and fair opportunity to litigate the issue in the previous forum." Sedlack, 134 F.3d at 224. If so, and as long as the other elements of collateral estoppel are met, Dresser will be bound by the previously determined issue regardless of whether Foster was a party to the case or not.

Dresser's first contention appears to be that Dresser I involved different issues than the case at bar because Dresser I addressed Dresser's standing to bring a host of state law tort claims while this action raises only the issue of Dresser's standing to pursue claims under various RICO provisions. Because Dresser I and the case at bar clearly involve common factual issues, we must reject this contention. In Dresser I, the district court determined that Dresser did not own any ULA/MD stock, either legally or equitably. As the district court explained:

> [Dresser] transferred this stock to Marie Arient by all facts as they appeared to any third party at that time. It was an unconditional transfer.
>
> [Dresser] alleges that he had some side agreement with Ms. Arient. Be that as it may, the fact of the matter is there was an outright transfer. The transfer was made on the corporate books. There is no question that [it] was absolute, and that is the way it stood.

J.A. 112-13. On appeal, we specifically determined that "the district court properly concluded that Dresser unconditionally transferred his interest in the ULA/MD stock on March 1, 1989" based upon the "unrefuted documentary evidence" Backus submitted to the district court. Dresser I, 139 F.3d 888, 1998 WL 119987 at *2. Dresser's ownership interest in the shares of ULA/MD was a disputed issue of fact. The district court resolved the issue, and we affirmed this determination in light of the "unrefuted" evidentiary submissions. Moreover, the determination that Dresser unconditionally transferred his ULA/MD shares was critical to the entry of summary judgment in favor of the Backus defendants in Dresser I. Thus, we conclude that Dresser is bound by the determination in Dresser I that, as of March 1, 1989,

7

Dresser no longer enjoyed any interest, legal or equitable, in the ULA stock.

Next, Dresser argues that he did not have a full and fair opportunity to litigate this factual finding, and that it should not be given preclusive effect for that reason. Essentially, Dresser's argument amounts to little more than an assertion that Dresser I was wrongly decided. According to Dresser, his evidentiary submissions in Dresser I on the issue of stock ownership were "improperly ignored," Reply Brief of Appellant at 11, and the court "misconstru[ed] the divorce decree," Reply Brief of Appellant at 17. These issues were raised, contested, and resolved against Dresser in Dresser I. We reject his contention that collateral estoppel does not apply.

B.

Having concluded that Dresser is bound by the previous determination that, as of March 1, 1989, Dresser did not own any interest in the shares of ULA/MD, we turn briefly to consider the effect of this conclusion on Dresser's RICO claims in the action currently before us. A claim may be brought under RICO by "[a]ny person injured in his business or property." 18 U.S.C.A. § 1964(c) (West Supp. 2000). Dresser's theory of recovery under RICO is premised on his contention that "he was always the equitable owner of the ULA/MD stock." Reply Brief of Appellant at 11. His complaint seeks damages based on "the conversion of dividends due him" as well as "the loss of the value of his interest in ULA." J.A. 23. Accordingly, his RICO claims are premised, as they must be, on his ownership of the shares that he transferred to Arient. Because Dresser I previously determined that Dresser unconditionally transferred the shares and, consequently, that he enjoyed no interest in the shares, the shares do not qualify as his "property." See 18 U.S.C.A. § 1964(c). We conclude that judgment was properly entered against Dresser.

III.

For the foregoing reasons, we affirm the decision of the district court.

AFFIRMED

8