BENNER & COMPANY and Emil
Hrobon, Plaintiffs-Appellees,

v.

ATLAS REMAINDER, INC., et al.,
Defendants-Appellants,

May T. Hrobon, Defendant-Appellee,

Fred H. Johnson, Trustee.

No. 17893.

United States Court of Appeals
Sixth Circuit.

Feb. 26, 1969.

Earl F. Morris, Columbus, Ohio, and
C. R. Beirne, Cincinnati, Ohio, for
appellants; Wright, Harlor, Morris, Arnold & Glander, Jon M. Anderson, Columbus, Ohio, Beirne, Wirthlin & Manley, Cincinnati, Ohio, on brief.

John C. Graham, Ernest B. Graham,
Zanesville, Ohio, and J. Bruce Donaldson, Detroit, Mich., for appellees; Raymond, Chirco, Fletcher, Donaldson & Ruwart, Detroit, Mich., on brief.

Graham & Graham, Zanesville, Ohio,
for appellee, Emil H. Hrobon.

Before EDWARDS, CELEBREZZE and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Benner & Company and Emil Hrobon[1] sought a declaration of rights under the will of Clay M. Thomas in the District Court of the Southern District of Ohio. The question about which the plaintiff sought a declaration concerns what rights the owners of the trust income have in relation to the owners of the remainder upon termination of the trust. A summary of the facts is necessary in order to gain the needed perspective for the determination made in this case.

The Atlas Linen Laundry & Supply Company (Atlas) was started by Clay M. Thomas in 1920 and upon his death in 1938, the operating assets of Atlas passed into a trust under which his wife, May, was the life income beneficiary. The pertinent provision of his will provided:

"All the balance of my property, both real and personal, of every kind and description, wheresoever situated, which I may own or have the right to dispose of at the time of my decease, I give, bequeath, and devise to my wife, Mae Thomas, in trust, for the benefit and the use of my wife, for and during her life, hereby directing my said trustee, Harry B. Holmes, to pay to her for her use and benefit all the income after the payment of operating expenses and taxes and other charges from my business at The Atlas Linen Laundry and Supply, or any other income that I may have after the payment of the other monthly legacies which I herebefore have set out, * * Upon the death of my said wife, the said trust as herein created shall cease, and the trustee or his successor shall convey and transfer to my legal heirs the balance of the said property, share and share alike, at the time of the death of my said wife."

The following year after Clay's death, May Thomas married Emil Hrobon. (Hereinafter "May" and "Emil" for convenience.) A dispute arose out of the trust provision concerning the trustee's power to pay for Atlas' operating expenses. A declaratory judgment action was instituted in the Ohio courts by the trustee in order to clarify the powers of the trustee and to determine the rights of the beneficiaries. The Ohio Supreme Court[2] upheld the trustee's power to use the income for Atlas' operating expenses and defined the corpus of the trust in this manner:

"The 'corpus' of the trust as here used is that portion of the total assets of the estate remaining after deduction of all debts of the testator * * and the entire cost of the administration. Upon determination of that amount it should be shown in the books of account and it will represent the amount as to which the remaindermen were entitled to the protection of law at the inception of the trust. The corpus of the trust is an amount of money representing the net assets of the estate as above stated. It does not consist of specific property. When so set up on the books of account, the amount of money representing the corpus of the trust will not be reduced as a result of the operation of the business. On the other hand, the use of income by the trustee in the operation, maintenance or expansion of the business must not be permitted to result in currently increasing the value of the corpus of the trust." 158 Ohio St. at 522, 110 N.E.2d at 583.

The corpus was found by the Ohio Supreme Court to be $134,924.34 at the inception of the trust in 1938. The Court also ordered the establishment of a retained income account in Atlas' accounting records for any income used by the

---

1. The District Court found that the interests of the defendant Emil Hrobon were identical with those of the plaintiff and realined him as a party plaintiff.

2. Holmes v. Hrobon, 158 Ohio St. 508, 110 N.E.2d 574 (1953).

trustee for the business and held that the income beneficiary would have a preserved right to that amount upon termination of the trust.

The appellees acquired an interest in Atlas in the following manner. May divorced Emil and in 1955 she sold her interest as the income beneficiary under the trust to Emil for a valuable consideration. Then, in 1962, Emil sold to Benner & Company a one-twentieth interest in all the rights he had acquired from his contract with May.

Appellants' interest in Atlas devolved from the purchase in 1954 by seven employees of Atlas and one outsider of the interest of the apparent remaindermen of the Clay M. Thomas Trust for $750,-000. In 1960, Atlas Remainder, Inc., was formed and the purchasers of the remaindermen's interest assigned and transferred their undivided interests to that company. The apparent remaindermen of the trust who were parties to the contract, Clay's brother and sisters and their children, are also party defendants-appellants.

The appellees' position is that the only amount the Ohio Supreme Court made available to the remaindermen at the termination of the trust was the $134,-924.34 corpus. The submitted justification by the appellees for such a declaration is that the trust provided the trustee with the power to pay the operating expenses, taxes and other charges of Atlas out of the trust income before distribution to the income beneficiary and since the subsequent growth of Atlas was financed by this income, the income beneficiary is entitled to all the growth of Atlas upon termination of the trust.

The District Court held that the remaindermen were to receive only the $134,924.34 corpus on termination of the trust and that the remaining assets, mainly Atlas itself, belonged to the income beneficiary under the trust. The Court found that the following assets were paid for by the trust income and were directly responsible for Atlas' growth: "float" consisting of linens in stock, leased or otherwise on hand; as-

sets of less than one year's life; fully depreciated assets; and goodwill of five companies that Atlas bought. The Court concluded that at the termination of the trust, the income beneficiary (the appellees) and not the remaindermen (the appellants) would get these assets.

■ The appellants argue that the Court lacked jurisdiction on several grounds. One of these grounds concerns the prematurity of the action in view of the fact that the trust has not been terminated. The will provided for termination of the trust upon the death of the life income beneficiary (May). The record here shows that May is still living, although she subsequently sold her interest, and that the business is still operating under the trust. The appellants contend that by reason of deaths and births subsequent to this litigation there may be at May's death remaindermen who are not parties to this litigation and therefore not bound by it. The appellees argue that the decision in this case will be binding upon any and all unborn remaindermen not a party to this litigation and not represented by a guardian or a trustee because the Federal and Ohio courts recognize the doctrine of virtual representation. This doctrine allows unborn remaindermen to be represented in court by the present class of remaindermen or by a member of the unborn class of remaindermen that is in being. See Stewart v. Oneal, 237 F. 897 (6th Cir.), cert. denied, 243 U.S. 645, 37 S.Ct. 406, 61 L.Ed. 944 (1916); Schneider v. Wolf, 120 Ohio St. 524, 166 N.E. 679 (1929); Bennett v. Fleming, 105 Ohio St. 352, 137 N.E. 900 (1922). A requirement of the doctrine is that the representative for unborn persons must have a similar or identical interest in the litigation. Stewart v. Oneal, *supra*, 237 F. at 903; G. Bogert, Trusts & Trustees, § 871 at 99–101 (2d ed. 1962). In this case, the remaindermen of the Clay M. Thomas Trust, who under the doctrine of virtual representation would be representing the unborn remaindermen, have sold their interests to Atlas Remainder, Inc. They no long-

er possess an interest in the remainder (assuming no default under their contractual arrangement), whereas remaindermen born after the contract with Atlas Remainder, Inc. and unborn remaindermen have a right under the trust to their shares of the remainder when the trust terminates. The unborn remaindermen would therefore not be represented by the remaindermen who sold their interest and are before the court since this latter class is not interested in the outcome of the question concerning the value of the corpus available to the remaindermen at the termination of the trust. These remaindermen will receive their contractual amount from Atlas Remainder, Inc. regardless of the outcome on the merits. Since these two interests are dissimilar and the unborn remaindermen are not represented, we hold that the doctrine of virtual representation is inapplicable.[3]

█ Two additional points raised by the appellee Benner & Company in support of its contention that the litigation is not premature require consideration. The first is that the present enjoyment of the life income interest and the stability of Atlas itself are both being disrupted because of the constant friction between the income interest and the remainder interest, and secondly it is argued that this conflict will continue even after May's death and the termination of the trust. We find neither reason persuasive and decline the invitation in this declaratory judgment action to construe the will beyond the point of the Ohio Supreme Court's adjudication.

The conflict that appellee makes reference to arises from the trustee's use of the trust income to finance Atlas' growth and pay its operating expenses. This was precisely the issue presented to the Ohio Supreme Court in Holmes v. Hrobon, and in its opinion, the Court clarified and set forth the trustee's

rights and duties with respect to his use of the income as follows:

"Giving full consideration to the desire of the testator that the Atlas business be continued, the history of its past operation, the fact that it had always been operated and expanded out of earnings, the complete lack of capital with which the trustee could operate, the amount of the profits realized from the business during the latter years of operation by the testator and the impossibility of operation by the trustee without using a portion of the income as capital, we conclude that it was the intention of the testator to and he did authorize the use by the trustee of income in the operation and expansion of Atlas, *even though such use reduced the amount of profits currently available for payment to the widow*. The right of the trustee to so use income would exist *only so long* as the business was operated profitably and the widow received a reasonable amount of the income. That the widow *has not* suffered hardship is evidenced by payment to her of $263,299.72 up to August 31, 1946.

\*   \*   \*   \*   \*   \*

"The right of the trustee to use income in operation extends to all phases of operation which sound business judgment would approve, but such right of the trustee to use a portion of the income does not authorize accounting such as will result in currently increasing the corpus of the trust estate or confiscation of income payable to the life tenant.

"This court does not undertake to direct the detailed manner in which the trustee's accounts should be kept. It is hoped, however, that such general principles may be herein stated as will enable accountants to rewrite or amend the trustee's books of account

---

3. The courts in Ohio, by virtue of Ohio Revised Code § 2307.131 (1955), are allowed to exercise discretion in the appointment of a trustee to protect unborn children's property rights if such protection is needed. Also, upon application by any party, the courts are required to appoint a trustee for unborn children.

so that they will satisfy all legal requirements." 158 Ohio St., at 520–521, 110 N.E.2d, at 582. (Emphasis supplied.)

We hold that the suit was premature because during May's lifetime there remains the possibility of other remaindermen coming into existence by birth or adoption, and therefore it cannot be conclusively said that all the interested parties are presently before the court. See Dahlgren v. Pierce, 270 F. 507, 517 (6th Cir. 1921).

The order of the District Court is vacated and the action is dismissed.