Margaret KLUGH; Katherine Klugh Maultsby; Mary Klugh Garner; John Bradley Klugh; William W. Bradley, III; Frederick H. Bradley; Patrick H. Bradley; Edna Bradley Troxell; Hugh W. Bradley; Mabel Bradley Payne; Mary Bradley Pressly; Thomas R. Bradley; William T. Bradley; Margaret Bradley Poole; David W. Bradley; John T. Bradley, Jr.; Frances K. Bradley; Mark E. Bradley, Jr., Elizabeth Bradley McGarity; Robert F. Bradley, III; Thomas J. Bradley; Frances Wright Bradley, III; William R. Bradley, II; Rufus A. Johnson, III; Mary Bradley Brown; Margaret Bradley Shuford; Arthur L. Bradley; James B. Bradley; Curtis L. Bradley; David J. Wardlaw; Martha Wardlaw Buie; Foster Bradley Wardlaw, Jr.; Ivey Jean Wardlaw Pressly; Robert S. Wardlaw; William W. Wardlaw; Mildred E. Wardlaw; John U. Wardlaw; Mary Wardlaw Deason; Annie Wardlaw Wright; Frances M. Wardlaw; John K. Bradley; Mary Bradley Miller, Martha Bradley Moody; Frances Trenholm Bradley; Jane H. Bradley; Martha B. Mayo; Robert F. Bradley, Jr.; Eustace U. Bradley; Mary Bradley Cox and Frances Thompson Sheppard, Appellants,

v.

Margaret KLUGH; Katherine Klugh Maultsby; Mary Klugh Garner; John Bradley Klugh; William W. Bradley, III; Frederick H. Bradley; Patrick H. Bradley; Edna Bradley Troxell; Hugh W. Bradley; Mabel Bradley Payne; Mary Bradley Pressly; Thomas R. Bradley; William T. Bradley; Margaret Bradley Poole; David W. Bradley; John T. Bradley, Jr.; Frances K. Bradley; Mark E. Bradley, Jr.; Elizabeth Bradley McGarity; Robert F. Bradley, III; Thomas J. Bradley; Frances Wright Bradley, III; William R. Brad-

ley, II; Rufus A. Johnson, III; Mary Bradley Brown; Margaret Bradley Shuford; Arthur L. Bradley; James B. Bradley; Curtis L. Bradley; David J. Wardlaw; Martha Wardlaw Buie; Foster Bradley Wardlaw, Jr.; Ivey Jean Wardlaw Pressly; Robert S. Wardlaw; William W. Wardlaw; Mildred E. Wardlaw; John U. Wardlaw; Mary Wardlaw Deason; Annie Wardlaw Wright; Frances M. Wardlaw; John K. Bradley; Mary Bradley Miller; Martha Bradley Moody; Frances Trenholm Bradley; Jane H. Bradley; Martha B. Mayo; Robert F. Bradley, Jr.; Eustace U. Bradley; Mary Bradley Cox and Frances Thompson Sheppard, Appellees,

v.

UNITED STATES of America; Certain Lands Located in Abbeville, Greenwood and McCormick Counties, South Carolina, Being a Portion of the Estate of W.K. Bradley, Deceased and the United States Department of Agriculture, Appellants.

Nos. 86–3536(L), 86–3537.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 10, 1986.

Decided May 6, 1987.

Frank H. Clabaugh (Dowling, Sanders, Dukes & Svalina, P.A., Beaufort, S.C., Joseph O. Rogers, Thomas E. Shealy, Rogers & Riggs, P.A., Manning, S.C., on brief), for appellants.

J. Carol Williams, Dept. of Justice, Land and Natural Resources Div. (F. Henry Habicht, II, Asst. Atty. Gen., Washington, D.C., Vinton Devane Lide, U.S. Atty., Columbia, S.C., J.D. McCoy, III, Asst. U.S. Atty., Sylvia Sepulveda-Hambor, Dirk D. Snel, Washington, D.C., on brief), for appellees.

Before WINTER, Chief Judge, HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

In a previous appeal, we construed the will of W.K. Bradley of South Carolina who died in December 30, 1881 to determine the persons in whom the fee of his real property would ultimately vest. *Klugh v. United States,* 588 F.2d 45 (4 Cir.1978). We considered the question because certain of Bradley's lineal descendants were claiming that their property interests in land previously owned by him were not validly acquired by the United States in several condemnation proceedings undertaken in 1936–39 pursuant to the Weeks Act, 16 U.S.C.

§§ 16 *et seq.* We held that under the terms of the will, title would irrevocably vest twenty-one years (possibly twenty-one years and nine months) after the death of the survivor of the testator's children and grandchildren living on the date of Bradley's death. Since the last survivor died January 21, 1967, we concluded that the fee would not have irrevocably vested until January 21, 1988, and possibly as much as nine months later. In the course of making this ruling, we noted an ambiguity as to the jurisdictional base on which the suit proceeded. We therefore directed the district court to require plaintiffs to amend their complaint to allege why the district court had jurisdiction of the case. *Id.* at 52, n. 4.

With the interests of the testator's lineal descendants so defined, the district court on remand undertook to adjudicate the rights of the parties. The plaintiffs sought return of title of the various properties and an accounting for their interim use. They alleged that they proceeded under F.R. Civ.P. 60(b) to reopen the judgments in the earlier condemnation cases on the grounds that the judgments were void, or, alternatively, that they should be set aside for good cause. On cross motions for summary judgment as to liability, the district court ruled that the plaintiffs who were adults at the time of the condemnation proceedings and had consented to the condemnations could not recover notwithstanding their contention that they were foreclosed from giving valid consent to the condemnation by the Bradley will because the will prohibited transfer of the properties. The district court therefore gave judgment for the United States as to them. But the district court gave summary judgment as to liability against the United States by setting aside the condemnation judgments in favor of (a) heirs who were unknown at the time of and who were not represented in the condemnation cases, (b) heirs who were unborn at the time of the condemnation cases, and (c) known minor

and incompetent heirs at the time of the condemnation proceedings who were represented by a guardian *ad litem* because the guardian failed adequately to perform his duty. *Klugh v. United States*, 620 F.Supp. 892 (D.S.C.1985). The district court certified an interlocutory appeal, and the nonprevailing plaintiffs and the United States both appealed. We allowed the appeal. We affirm to the extent that the district court ruled the United States was not liable to consenting adult condemnees, and we vacate the remainder of the judgment and remand for further proceedings.

## I.

The facts were stated extensively in our prior opinion, and we will not repeat them. Where necessary, we will refer to them and state additional facts in the text which follows.

## II.

Even without consideration of the jurisdictional base on which the suit was brought, we agree with the district court that plaintiffs who were adults and who consented to the condemnations may not maintain suit on the ground that under the Bradley will they were prohibited from giving valid consent to convey their property. Under principles of estoppel, we hold that they are foreclosed from making this argument.[1] In their appeal (No. 86–3536), we affirm.

## III.

As we have stated, in the previous appeal we required plaintiffs to allege the basis on which the jurisdiction of the district court was invoked. Plaintiffs, consistent with their claim that they were entitled to at least a partial return of the property, alleged that they were proceeding under F.R.Civ.P. 60(b), and the district court exercised jurisdiction under that rule to reopen the judgments in the several condemnation

---

1. We also agree with the district court that the adult heirs' allegations of legal error did not constitute exceptional circumstances justifying relief from judgment under F.R.Civ.P. 60(b)(6).

620 F.Supp. at 896 and n. 1. For reasons which we discuss later, however, we also find that the district court erred by analyzing the plaintiff's claims as actions under Rule 60.

cases. In the light of two decisions rendered by the Supreme Court since we decided the previous appeal, we think that the district court proceeded in error. We think that those cases hold, as the government contends, that plaintiffs' rights, if any, can be asserted only under the provisions of the Quiet Title Act, 28 U.S.C. § 2409a (QTA).

Section 2409a(a), with certain exceptions not pertinent here, permits the United States to be named "as a party defendant in a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." Certainly this suit falls within those terms. It is an effort by plaintiffs to obtain an adjudication that they have an existing property right in real property which the United States purportedly condemned to establish a national park and which is being used as a national park.

In *Block v. North Dakota*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), the state of North Dakota, claiming ownership of certain portions of a riverbed, sued several federal officials to resolve the dispute arising from its claim and the claim of the United States to the riverbed. Initially North Dakota sought a mandamus and injunctive relief. Later it included a claim under the QTA. After North Dakota prevailed in the district court and the court of appeals, the United States sought and obtained certiorari on the issue of whether the statute of limitations in the QTA applied to a state; and North Dakota's cross-petition for certiorari was also granted to consider if North Dakota had a remedy supplemental to the QTA. Thus two issues were presented for decision: (1) "whether Congress intended the QTA to provide the exclusive procedure by which a claimant can judicially challenge the title of the United States to real property," and (2) whether the QTA's 12–year statute of limitations applies when the plaintiff is a sovereign state. *Id.*, 461 U.S. at 276–77, 103 S.Ct. at 1814. Both questions were decided in the affirmative, and it is the answer to the first which concerns us here.

The Court extensively considered the legislative history of the QTA, a statute which undertook to waive the sovereign immunity of the United States to suit with respect to suits involving title to land. Based upon that history, the Court concluded that the remedy embodied in the QTA was exclusive, and it rejected the argument that the QTA's restrictions to bringing such a suit could be avoided by resort to the so-called "officers suit", i.e., a suit against federal officers charged with supervision of the disputed area, rather than against the United States. The language employed by the Court in arriving at this conclusion presages the decision we must make here:

> If we were to allow claimants to try the Federal Government's title to land under an officer's-suit theory, the Indian lands exception to the QTA would be rendered nugatory. The United States could also be dispossessed of the disputed property without being afforded the option of paying damages, thereby thwarting the congressional intent to avoid disruptions of costly federal activities. Finally, and most relevant to the present cases, the QTA's 12–year statute of limitations, the one point on which the Executive Branch was most insistent, could be avoided, and contrary to the wish of Congress, an unlimited number of suits involving stale claims might be instituted.

*Id.*, 461 U.S. at 285, 103 S.Ct. at 1818.

*Block* was followed by *United States v. Mottaz*, 476 U.S. ——, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986), in which a present day heir asserted that the allotment of her Indian ancestors in certain reserved lands had been illegally sold by the United States as trustee and that she was entitled to the current fair market value of her inherited interest. The Court held, on the authority of *Block*, that the plaintiff's claim to current market value, rather than her share of the sales price which was not distributed to her, meant that she was asserting that she was vested with title to the disputed land and therefore the QTA governed the conduct of her suit, including the period of limitations fixed by the QTA which made her suit untimely.

While it is true that neither *Block* nor *Mottaz* considered whether a claimant to property acquired by the United States by condemnation could litigate his claim by motion under Rule 60(b) to reopen the condemnation judgment rather than under the QTA, we think that they sufficiently indicate that a claimant may not do so that we hold that the Rule 60(b) motion is not available to plaintiffs in this case. The Congressional concern that the "carefully crafted provisions of the QTA" not be averted by artful pleading is too strong to permit any other conclusion. *Block*, 461 U.S. 285–86, 103 S.Ct. 1818–19.

From what we have said, it might be concluded that plaintiffs' complaint must be dismissed for lack of jurisdiction because of their failure to invoke the jurisdiction of the district court under the QTA when, by direction from us to plead jurisdiction, they alleged only that they proceeded under Rule 60(b). Plaintiffs are saved from dismissal, however, by 28 U.S.C. § 1653 which provides that "[d]efective allegations of jurisdiction may be amended, upon terms in the trial or appellate courts." On the theory that it would be improper for us or for the district court to deny plaintiffs leave to amend their complaint to allege jurisdiction under the QTA—the only possible jurisdiction base, as we hold—and that plaintiffs would seek whatever relief is available to them, we will discuss their rights under the QTA and other applicable law.

### IV.

The QTA, by § 2409a(f), provides:

Any civil action shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

■ Because this suit was filed January 18, 1973, it follows that every competent adult member of the plaintiff group who was in being on January 17, 1961 and who knew or should have known that the United States claimed the several parcels which it had condemned was barred from suit. We think that unquestionably every competent adult in being on that date either knew or should have known of the government's claim. The government was in open and obvious possession of the lands and operating them as a national forest. *See Fulcher v. United States*, 696 F.2d 1073 (4 Cir. 1982). *See also Grosz v. Andrus*, 556 F.2d 972 (9 Cir.1977). *U.S. v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), and the terms of the QTA foreclose any claim by plaintiffs that limitations did not begin to run until they, or any one of them, became aware that they had a legal claim against the government.

Plaintiffs who are not barred by the limitations period of the QTA have a right to pursue their claim under the QTA. The Bradley pedigree data which is in the record is not in such form that we can accurately ascertain if there are any Bradley heirs who are not barred by limitations. There is also the possibility that other heirs may be born prior to January 21, 1988. For the guidance of the district court on remand, we think it desirable to delineate some of the contours of the right of any of such heirs to recover as well as the right to recover of plaintiffs, such as incompetents, against whom limitations would not run.

### V.

In *Fulcher v. United States, supra,* we had occasion to spell out some of the ramifications of the QTA. In addition to the provisions we have mentioned, the QTA provides that the United States shall not be disturbed in possession or control of any real property involved in an action under the section. If the action is decided against the United States, the United States may nevertheless retain the property upon payment of just compensation for the interest it retains. 28 U.S.C. § 2409a(b). *Fulcher* was a case in which the plaintiff asserted that he had an interest in property acquired by the United States by condemnation superior to the purported owner against whom the condemnation case was instituted. The plaintiff was not named as an owner in the condemnation case nor did he

receive actual notice of the condemnation until after the condemnation case was completed. We held that he could assert his right to the property under the QTA but that the government had acquired indefeasible title through condemnation and that the plaintiff, if he was not barred by the QTA's 12–year statute of limitations and if he could prove his superior title, could only recover compensation "determined by ascertaining the value of the property on the date the declaration of taking was filed", together with interest to the date of payment. *Id.*, 632 F.2d at 280.

▮ As applied to the instant case, *Fulcher* thus holds that plaintiffs who can establish a right to recover under the QTA may not be granted a return of the property or damages based upon its current value. At most, such plaintiffs can recover only the value of their interests on the date of taking, with interest to the date of payment.

## VI.

▮ Persons who are not parties to an action ordinarily are not bound by the judgment in that action. But the government maintains that plaintiffs who may have a right to recover damages against the United States under the QTA had their rights adjudicated in the original condemnation proceedings under the doctrine of virtual representation. Under certain circumstances, it is true that a nonparty to an action may be bound by a judgment under res judicata if one of the parties to the action is so closely aligned with the interests of the nonparty as to be his virtual representative. This doctrine of virtual representation, the historical antecedent of class representation under F.R.Civ.P. 23, allows remaindermen who are incompetent or not in being to be represented in court by the existing class of remaindermen. *Benner & Company v. Atlas Remainder, Inc.*, 407 F.2d 219, 221 (6 Cir.1969). *See McArthur v. Scott*, 113 U.S. 340, 5 S.Ct. 652, 28 L.Ed. 1015 (1885). The doctrine of

virtual representation is recognized by federal and state law alike in this case. *Supra;* S.C.Code § 15–5–50; *People's National Bank v. Barlow*, 235 S.C. 488, 112 S.E.2d 396 (1960); *McDavid v. McDavid*, 187 S.C. 127, 197 S.E. 204 (1938); Restatement (Second) Of Judgments § 41(1)(e).

▮ Because the doctrine of virtual representation applies principles of res judicata to nonparties to a judgment, the doctrine must cautiously be applied in order to avoid infringing on principles of due process. In order for the doctrine of virtual representation to apply, the heirs of Bradley whose rights were adjudicated by the original condemnation proceedings and the remaindermen plaintiffs in this action must be so closely aligned in interest as to justify precluding relitigation of the plaintiffs' claim. *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 340–41 (5 Cir.1982); *Pollard v. Cockrell*, 578 F.2d 1002, 1008–09 (5 Cir.1978). The doctrine of virtual representation does not authorize application of a bar to relitigation of a claim by a nonparty to the original judgment where the interests of the parties to the different actions are separate or where the parties to the first suit are not accountable to the nonparties who file a subsequent suit. *Id.* In addition, a party acting as a virtual representative for a nonparty must do so with at least the tacit approval of the court. *Id.; Ethnic Employees of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1409 (D.C. Cir.1985); Restatement (Second) of Judgments § 41(1)(e). *See also* Restatement (Second) of Judgments § 36(1), comment b ("The essential question is whether there is a disclosed relationship in which the party is accorded authority to appear as a party on behalf of others").

A principle issue presented by the condemnation proceedings in this case was the value to be placed on the properties that were taken by the government.[2] The interests of the adult heirs before the court as to value were identical to those of the other remaindermen. Both would strive to dem-

---

**2.** The adult, competent heirs entered into contracts of sale to sell the properties. They did not contest the taking, and they agreed on the

price. Condemnation proceedings were instituted essentially in an effort to clear title.

onstrate the highest value possible for that property. In addition, the adult heirs who received the entire condemnation award would be accountable to other remaindermen not so compensated, and this potential liability would be another incentive for the adult heirs to exert every effort to obtain a maximum award. The value of the properties was thus sufficiently litigated by the adult competent parties to the condemnation action. Indeed, counsel must admit this fact, because to deny it would be to admit representation of parties having a conflict of interest.

■■ The district court, however, refused to apply the judgment from the condemnation proceedings to two discrete groups of plaintiffs in this action. The district court refused to apply the condemnation judgment, first, to those heirs who were not in being or were unknown at the time of the condemnation proceedings because these plaintiffs were not made parties to the condemnation proceedings or were not represented by guardians *ad litem*. The district court's conclusion to reject application of the doctrine of virtual representation to these plaintiffs was correct. The adult heirs did not receive the approval of the condemnation court to represent the interests of the unborn or unknown heirs, nor was there any basis for finding that that court was aware during the condemnation proceedings that the parties were acting as representatives for all of the remaindermen. While the adjudication of value as of the dates of the condemnation proceedings might be highly persuasive of the properties' values, we do not think that the condemnation judgments are legally binding on heirs not in being or unknown not represented by guardians *ad litem* in those proceedings. We would add that as a practical matter it is unlikely that proof can be addressed today as to value on the date of the several takings which is markedly different from the values fixed in those proceedings.

■■ Second, the district court held that the known minor or incompetent heirs who were represented by guardians *ad litem* in the condemnation proceedings were enti-

tled to recover because the guardians made only a perfunctory appearance in the condemnation proceedings in which they submitted the interests of their clients to the court and thus failed adequately to protect their clients' interests. We think that the district court erroneously failed to apply the doctrine of virtual representation to this class of plaintiffs, because the condemnation court was on notice that the adult heirs would be acting in the capacity as virtual representatives for these remaindermen by virtue of the fact that their attorneys were withdrawing from active participation in the proceedings. As we have stated, there was no divergent interest between these two classes which would have made this representation invalid. As a consequence, we think that under the doctrine of virtual representation, the known minor or incompetent heirs who were represented by guardians *ad litem* were bound by the condemnation judgments and they have no right to recover in this lawsuit.

## VII.

In summary, the dismissal of the claims of the adults who consented to the condemnation is affirmed.

All other provisions of the judgment are vacated, and the case is remanded with the following directions to the district court:

Dismiss the claims of known minor heirs and incompetent heirs who were represented by a guardian ad litem in the condemnation proceedings;

Dismiss the claims of all competent heirs unknown or not in being at the time of the condemnation proceedings who attained their majority at a date more than 12 years prior to the commencement of this action;

Except as dismissed as aforesaid, properly join, through the appointment of a guardian ad litem or otherwise, all other heirs, including heirs who were unknown or not in being at the time of the condemnation proceeding or who are presently unknown or not in being, ascertain the value of the properties as of the dates of taking, and award to such other heirs

their respective commuted shares payable with interest to the date of payment.

No. 86–3536—AFFIRMED.

No. 86–3537—VACATED AND REMANDED.