John MARTIN, Individually and on behalf of a Class of Plan Participants as set forth herein; John Samuels, Individually and on behalf of a Class of Plan Participants as set forth herein; William Shoaf, Individually and on behalf of a Class of Plan Participants as set forth herein, Plaintiffs–Appellants,

v.

AMERICAN BANCORPORATION RETIREMENT PLAN; American Bancorporation, an Ohio corporation; Brent E. Richmond, as a fiduciary of the Plan, Defendants–Appellees,

and

Wesbanco, Incorporated, a West Virginia banking corporation, Defendant.

No. 04–1559.

United States Court of Appeals, Fourth Circuit.

Argued: Feb. 1, 2005.

Decided: May 11, 2005.

**ARGUED:** Patrick Stanley Cassidy, CASSIDY, Myers, Cogan, Voegelin & Tennant, L.C., Wheeling, West Virginia, For Appellants. John Porco, Schrader, Byrd & Companion, P.L.L.C., Wheeling, West Virginia; Cynthia B. Jones, Steptoe & Johnson, Morgantown, West Virginia, For Appellees. **On Brief:** Thomas M. Cunningham, Cassidy, Myers, Cogan, Voegelin & Tennant, L.C., Wheeling, West Virginia, For Appellants. Sara E. Hauptfuehrer, Steptoe & Johnson, Morgantown, West Virginia, For Appellee American Bancorporation; Ray A. Byrd, Schrader, Byrd & Companion, P.L.L.C., Wheeling, West Virginia, for Appellees American Bancorporation Retirement Plan and Brent E. Richmond.

Before WIDENER, MOTZ, and GREGORY, Circuit Judges.

Reversed and remanded by published opinion. Judge GREGORY wrote the opinion, in which Judge WIDENER and Judge MOTZ joined.

## OPINION

GREGORY, Circuit Judge:

John Martin, John Samuels, and William Shoaf (collectively "Appellants"), retirees from Wheeling National Bank, both individually and on behalf of a class of retirement plan participants, brought this action under the Employee Retirement Income Security Act ("ERISA") § 502(a), 29 U.S.C. § 1132(a) (2000), claiming additional pension benefits attributable to employee contributions they made to the American Bancorporation Pension Plan prior to 1986. Four years after the suit was commenced, the parties each moved for summary judgment. The district court denied Appellants' motion for summary judgment "due to the preclusive effects of res judicata and [its] finding that the Plan Administrator correctly calculated the benefits of all named plan participants." J.A. 620. However, the district court granted American Bancorporation Retirement Plan's ("American Bancorporation") motion for summary judgment because of its finding that the Plan Administrator had correctly calculated the benefits of all named plan participants. *Id.*

Because we find that Appellants' claims were not barred by res judicata, we reverse the district court's grant of summary judgment for American Bancorporation and remand for further proceedings consistent with this opinion.

## I.

### A. The Retirement Plan.

Established in 1965, the AETNA retirement plan ("AETNA plan"), predecessor to the American Bancorporation Retirement Plan challenged in this case, was a "contributory defined benefit plan," mean-

ing that it provided pension benefits as defined by a formula set forth in the retirement plan. The AETNA plan also contained an employee contribution provision, which mandated that participants contribute toward funding their benefits, with the balance of the funding and the risk of investment losses falling on the employer. Under this type of plan participants have a right to a certain level of accrued benefits, but no right to the assets of the plan.

In March and December of 1986, the AETNA Plan underwent a series of important amendments. These amendments involved the adoption of a plan developed by State Mutual Life Insurance Company, and created the incarnation of the retirement plan currently before this court ("the Plan"). First, this series of amendments eliminated the employee contribution provision of the AETNA Plan. Additionally, the March 1986 amendments[1] altered the retirement compensation scheme such that employees received a flat percentage pension equal to 32% of their average salary for the last five years of their employment. However, and critical to the issues in this case, both company documents and executive statements belie a flat 32% compensation program. A summary plan description ("SPD") entitled "Your Retirement Plan," dated August 1986, described the benefits as 20% of a participant's monthly earnings plus an amount equal to the amount of contributions made by any participants who were active in the plan before a specific date ("20 + "). J.A. 321. A similar interpretation was expressed when an executive committee of the Board of Directors of Wheeling National Bank met to discuss the retirement plan. At that meeting, as described by the district court, the committee noted:

---

1. The exact text of this amendment appears nowhere in the record, but it appears to be

undisputed that the text of the amendment did not refer to the return of any contribution.

that the original proposal called for a non-contributory plan with a retirement benefit of 32% of base salary. However, the Committee further noted that what had been installed was a non-contributory plan which would provide a benefit of 20% of annual salary. The Committee explained that employees who were participants in the Aetna plan would receive 20% plus their contributions to the Aetna plan with accrued interest. The combined benefits to participants of the Aetna plan would be approximately 32% of the annual salary at retirement date for those employees.

*Id.* at 797–98.

The AETNA Plan was further amended in December of 1986. Under these amendments, employees received a flat percentage pension equal to 20% of their average salary for the last five years of their employment.[2] The American Bancorporation Retirement Plan[3] was further amended in 1992, such that all benefit accruals ended on December 31, 1992.

### B. McKain Suit.

William D. McKain ("McKain") retired from Wheeling National Bank on March 31, 1989.[4] At the time of his retirement, McKain had acquired over 23 years of service for American Bancorporation. *Id.* at 798. In April of 1992, McKain applied for the distribution of his pension benefits

and received a check in the amount of $138,904.90. American Bancorporation used the 20% benefit calculation to arrive at this figure. Upon receipt of this check, McKain filed a claim for additional benefits under the Plan, maintaining that he was entitled to a 32% benefit or a 20+ benefit with interest. The Plan Administrator rejected this challenge. McKain's subsequent appeal of that decision was also denied. When McKain then expressed his intent to file suit on the matter,[5] American Bancorporation filed a declaratory judgment action to resolve the proper earnings formula to determine McKain's pension benefits.

In that declaratory judgment action McKain moved for summary judgment contending that the resolutions adopted in March of 1986 by the Board of Directors of Wheeling National Bank constituted an amendment to the retirement plan. McKain argued that this amendment established a benefit equal to 32% of compensation. American Bancorporation countered that the 32% benefit plan was never implemented as clarified during the earlier referenced meeting of an executive committee of the Board of Directors of Wheeling National Bank, and that McKain was estopped from relying upon the 32% benefit because the SPD stated that the benefit was 20%. The district court granted McKain's motion for summary judgment, finding that the AETNA plan was

---

**2.** An SPD distributed in June of 1987 described the benefits as 20% of monthly earnings, and importantly made no mention of the return of any contribution.

**3.** In 1989, the Plan was further amended, becoming the American Bancorporation Retirement Plan.

**4.** At the time of his retirement, Appellants aver that McKain was a "highly compensated employee" for IRS purposes. Though not pertinent to our issues, Appellants argue that

American Bancorporation's calculation of McKain's benefits violated IRS provisions by discriminating against lower level employees in favor of highly compensated employees.

**5.** Ultimately, Appellants helped to finance this suit. Affidavits show that they personally contributed money to allow McKain's suit to proceed. For example, Appellant John Samuels contributed $1,600 to McKain's fund. These contributions were made in the hopes that if McKain won his case, other employees would benefit. J.A. 89.

properly amended in March of 1986 to provide benefits of 32%, and again in December of 1986 to provide 20% benefits.[6] *Id.* at 803–04. Ultimately, the district court ruled that McKain had a vested benefit equal to 32% of his compensation. *Id.* at 805.

Thereafter, the parties settled upon a calculation method and the exact amount of McKain's benefits. In its order approving of the settlement between the parties, the district court described the Plan as calling for "the benefit to be a percentage of W–2 earnings averaged over five consecutive years of plan participation, which will give the participant the highest benefit possible." *Id.* at 881. Brent Richmond ("Richmond"), the Plan Administrator, employing the calculation approved by the district court, determined McKain's benefit under the settlement by calculating the "benefit under two separate formulae: one of which was based on 32 percent of compensation; and a second formula, which was based on a 20 percent of compensation."[7] *Id.* at 513. Applying these formulae to McKain's earnings, Richmond determined that the first calculation (32%) produced a higher benefit. Therefore, McKain received a 32% benefit.

To reach the actual amount of McKain's benefit, the analysis becomes more complex.[8] The Plan's basic retirement benefit is generally stated as an amount payable if the participant remains in covered employment until his normal retirement date ("NRD"), generally age 65. Those who terminated employment before age 65 received less than full benefits. The Plan calculated this benefit reduction through a mathematical factor known as an Accrued Benefit Adjustment ("ABA factor"). The ABA factor is a ratio in which the numerator represents the participant's actual years of service, and the denominator represents projected service through the NRD. The ratio is "balanced" where the same start date is used to calculate both the numerator and denominator, "unbalanced" where it is not. Under a balanced ratio, any time a person retires before their NRD the ABA factor would be less than 1.0, resulting in less than full benefits after the participant's benefit is multiplied by that factor.

Appellants contend that McKain's benefit was calculated incorrectly, using an ABA factor of "1" (the equivalent of having a fully accrued benefit), despite the fact that McKain's benefit was calculated using a date that was a full five years before his NRD. Specifically, in calculating McKain's benefit, American Bancorporation employed an unbalanced ratio, using his actual start date (as opposed to the date he began participation in the pension program) for the numerator, and the date he began participating in the pension program for the denominator. The end date used to calculate the numerator (McKain's

---

6. Importantly, the district court noted that the SPD and executive committee statements did not amount to a formal written amendment to the Plan. J.A. 803–04.

7. In detail, McKain's compensation between 1981–85 (in order to apply a 32% compensation) was compared to McKain's compensation between 1984–88 (in order to encompass the amended policy under which 1984 and 1985 had 32% benefits and the other three years had 20% benefits). *Id.* at 882. The reason for this was because the 32% benefits

ended with the December 1986 amendment. It should be noted here that it is not automatic that the 32% number would produce a higher benefit because increased earnings after the amendment could offset the 12% loss.

8. The actual amount of McKain's benefit is irrelevant for our purposes. However, the manner in which the benefit was calculated is an important element of this suit. Therefore, we recount it here.

actual years of service) was 11/1/1986.[9] Given that McKain began working at American Bancorporation on 5/1/59, his numerator was 28.[10] Mc–Kain's projected NRD was 11/1/91. Therefore, because McKain began participating in the program on 11/1/65, his denominator (McKain's projected service through his NRD) was 26. This unbalanced ratio produced an ABA factor of 1.0, entitling McKain to full benefits.[11]

According to Appellants, this calculation granted McKain a larger benefit than that to which he was entitled. In fact, American Bancorporation's own expert, Michael Pisula, testified that given McKain's raw data, and the parameters of the Plan, the only way to achieve an ABA factor of "1" for McKain was to simply make it up or to use an "unbalanced ABA." *Id.* at 578–79. Importantly, he further testified that the language of the Plan in no way supports the use of an unbalanced ABA. *Id.*

## C. General Recalculations.

After the McKain settlement, American Bancorporation applied the same calcula-tion it used for McKain to all other plan participants. Similar to McKain's calculation, where an employee had years of service prior to the inception of the AETNA plan, an unbalanced ABA was used. Additionally, Richmond calculated benefits under both the 32% and 20% formulae, awarding employees the larger of the two, as was done in the *McKain* matter.[12] Finally, the numerator end date of 11/1/1986 was used, as it was in *McKain,* because the 32% program was no longer in effect in December of that year.

## D. Current Action.

On September 22, 2000, Appellants brought this action (both as a class and as a derivative action), claiming additional pension benefits attributable to employee contributions they made to the Plan prior to 1986. Appellants' main contention before the district court was that employees other than McKain received benefits that were less than those promised by the Plan because the recalculations did not pay employees their rightful 20+ benefits as set out in the August 1986 SPD,[13] and "pro-

9. This date was used because of the Plan amendments in December of 1986, which changed the benefit percentage to 20%. Thus, November of 1986 was the last month of the 32% plan.

10. American Bancorporation argues that the use of the 1959 date gave credit to McKain for his years of service prior to the enactment of the AETNA plan in 1965, which the Plan was designed to do.

11. The actual figure is approximately 1.08, however the ABA factor cannot be higher than 1.0. Under a balanced ratio, where the dates used for calculation of both the numerator and the denominator are the same (using the date of participation for both the numerator and the denominator), McKain would achieve a ratio of 21 over 26. Under that ratio, McKain's ABA factor is only .8077, thereby lowering his benefits by almost 20%. *Id.* at 576.

12. To the extent that these recalculations resulted in a decrease in benefits for any plan participants, their benefits remained at the level that existed prior to the recalculations.

13. Although we do not reach the merits of Appellants' 20+ claim, we will briefly describe it here. The 20+ claim is based on the August 1986 SPD, which explicitly states: If you retire on your normal retirement date your monthly benefit under the normal form of benefit payment for unmarried participants will be equal to 20% of your monthly earnings. In addition, if you were an active participant before November 1, 1985, *and* you contributed to the plan, you will receive an amount equal to your contributions accumulated with Credited Interest to your Normal Retirement Date. J.A. 321. Despite the fact that this document conflicts with the official plan documents, Appellants contend that the SPD controls and point to this court's deci-

duced arbitrary results."[14] Appellants allege that American Bancorporation employed this calculation because they knew they would save $600,000 by paying out benefits without repaying contributions.

Specifically, Appellants brought suit under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) (2000), seeking to recover benefits due to them under the terms of their plan, to enforce [their] rights under the terms of the plan, or to clarify their rights to future benefits under the terms of the plan, alleging that American Bancorporation miscalculated McKain's benefits and that the result of said miscalculations was that members of the class are due additional benefits. J.A. 40, 43. Appellants also sought equitable relief under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) (2000), seeking to enjoin American Bancorporation's practices such as the failure to give notice required under ERISA § 204(h), the failure to file certain documents with the Department of Labor, the failure to provide Appellants with an adequate explanation for the denial of their benefits as required by § 503 of ERISA, 29 U.S.C. § 1133 (2000), and the failure to comply with the benefit accrual requirements of § 204 of ERISA. Appellants finally charged that American Bancorporation failed to administer the Plan in accordance with their fiduciary duties under ERISA, and violated § 404 of ERISA, 29 U.S.C. § 1104 (2000), by administering and interpreting the Plan in a manner contrary to its written terms.

American Bancorporation eventually moved for summary judgment under Fed. R.Civ.P. 56, contending that Appellants' claims were effectively decided by the *McKain* order establishing the law regarding the Plan and its calculations. In August of 2001, the district court granted the motion in part. Specifically, the district court granted the motion with respect to issues concerning the amendment of the Plan and the use of the 32% and 20% benefit factors, finding that collateral estoppel barred further litigation. However, the district court denied the motion with respect to the remaining issues, in particular the calculation of benefits under the "ABA factor." After the issuance of this order, Appellants almost immediately requested findings of fact and conclusions of law.

In relevant part, the district court made the following findings of fact: 1) the *McKain* order concluded that the 32% amendment was properly adopted in March of 1986 and that the 20% amendment was properly adopted in December of the same year; 2) the *McKain* order made no reference to the ABA factor or how to determine such a factor; and 3) Appellants in this case provided some degree of financial support to McKain in his litigation. *Id.* at 155–56. Importantly, the

---

sion in *Aiken v. Policy Management Systems Corp.*, 13 F.3d 138 (4th Cir.1993). There, we stated that: representations in a SPD control over inconsistent provisions in an official plan document. In *Pierce v. Security Trust Life Ins. Co.*, this Court recognized that the SPD is "the statutorily established means of informing participants of the terms of the plan and its benefits," and the "employee's primary source of information regarding employment benefits." We noted that the logical import of the status of the SPD was that "if there was a conflict between the complexities of the plan's language and the simple language of the SPD, the latter would control." *Id.* at 140 (citations omitted). Appellants ultimately argue that application of the rule of *Aiken* to the facts of this case mandates that they receive 20+ benefits.

**14.** For example, while McKain's 32% benefit was largely equivalent to his 20+ benefit, Appellant Martin's 32% benefit was less than his 20% benefit without contributions.

district court concluded as a matter of law that:

> The only amendments to the Plan to which collateral estoppel applies are the March 1986, December 1986 and January 1989 Amendments that are the subject of discussion in the *McKain* case Orders entered March 7, 1995 and September 22, 1995. *By stating that collateral estoppel applies as to the "amendment" of the Plan under such Amendments, the Court is referring to the Plan's having satisfied its own written terms with which compliance is required for an amendment to have actually taken place,* which issue was specifically reviewed by Judge Stamp in the *McKain* case.

*Id.* at 158 (emphasis added).

Appellants' subsequent request for clarification of these findings of fact and conclusions of law was denied, with the court stating "Fourth Circuit precedence [sic], res judicata, collateral estoppel and the facts in this matter and the *McKain* matter sufficiently deter the Court from allowing the parties to relitigate the 204(h) notice issue surrounding the March 1986, December 1986 and January 1989 Plan Amendments." *Id.* at 188.

Finally, both sides moved for summary judgment in January of 2003. The magistrate judge issued a report and recommendation ("R & R") on the opposing summary judgment motions. Specifically, the R & R recommended that American Bancorporation's motion for summary judgment be granted because "the Plan Administrator correctly followed [the district court's] previous orders and correctly calculated the benefits of all named plan participants." *Id.* at 620. The R & R also recommended that Appellants' motion for summary judgment be denied "due to the preclusive effects of res judicata and this Court's finding that the Plan Administra-

tor correctly calculated the benefits of all named plan participants." *Id.* On March 31, 2004, the district court adopted the R & R on the summary judgment motions. This ruling barred Appellants' 20 + claims. From that decision, Appellants bring this appeal.

## II.

Appellants first challenge the district court's grant of summary judgment to American Bancorporation based on its finding that res judicata bars Appellants' claims. Our review of a district court's grant of summary judgment is *de novo*, applying the same legal standards applied by the district court. *Elliott v. Sara Lee Corp.,* 190 F.3d 601, 605 (4th Cir.1999).

■ Res judicata (or claim preclusion) precludes the assertion of a claim after a judgment on the merits in a prior suit by the parties or their privies based on the same cause of action. *Pueschel v. United States,* 369 F.3d 345, 354–55 (4th Cir.2004). "For the doctrine of *res judicata* to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Id.* Appellants argue that the third element of res judicata, identity of parties or their privies, is not satisfied on the facts of this case. Specifically, Appellants argue that the district court erred in finding the existence of privity in this case because the district court applied the more liberal "virtual representation" standard enunciated by the Eighth Circuit in *Tyus v. Schoemehl,* 93 F.3d 449 (8th Cir.1996), as opposed to applying the more stringent "virtual representation" standard enunciated by this Circuit in *Klugh v. United States,*

818 F.2d 294, 300 (4th Cir.1987). We agree.[15]

■ To be in privity with a party to a former litigation, the non-party must be "so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir.1997) (citing *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 493 (4th Cir.1981)). However, an exact definition of privity is an elusive concept. *See Nash*, 640 F.2d at 493–494. As this court stated in *Nash*, privity "is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." [16] *Id.* at 494. (internal quotation marks omitted)

■ There are three generally recognized categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication: (1) a non-party who controls the original action; (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action. *See generally* 18A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4448 (2d ed.2002). The third category, that of adequate representation, also known as "virtu-

al representation," is that which is contested here. *See American Forest Resource Council v. Shea*, 172 F.Supp.2d 24, 31 (D.D.C.2001) ("the doctrine of virtual representation, which falls under the 'adequately represented' category").

In this Circuit, virtual representation has been defined narrowly. In *Klugh*, we stated:

> Because the doctrine of virtual representation applies principles of res judicata to nonparties to a judgment, the doctrine must cautiously be applied in order to avoid infringing on principles of due process.... *The doctrine of virtual representation does not authorize application of a bar to relitigation of a claim by a nonparty to the original judgment where the interests of the parties to the different actions are separate or where the parties to the first suit are not accountable to the nonparties who file a subsequent suit. In addition, a party acting as a virtual representative for a nonparty must do so with at least the tacit approval of the court.*

818 F.2d at 300 (citations omitted)(emphasis added).[17] Defining the "tacit approval" requirement, we cited to the Restatement (Second) of Judgments, which states: "The essential question is whether there is a disclosed relationship in which the party is accorded authority to appear as a party on

---

**15.** Appellants also argued that the district court erred in denying employee's claims based on res judicata because: 1) the district court's ruling applying collateral estoppel set forth the "law of the case"; 2) claim preclusion does not apply to declaratory judgment actions; and 3) the "same cause of action" element of res judicata was not satisfied on these facts. Appellants' Brief at 15–22. Because we resolve this issue on other grounds, we do not address these arguments.

**16.** Wright, Miller, and Cooper recommend that the privity label either be discarded en-

tirely or "retained as no more than a convenient means of expressing conclusions that are supported by independent analysis." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4448 at 327 (2d ed.2002).

**17.** *See Bouchat v. Champion Products Inc.*, 327 F.Supp.2d 537, 543 (D.Md.2003) (citing *Klugh* for virtual representation); *In re Barrow*, 87 B.R. 879, 891 (Bkrtcy.E.D.Va.1988) (same).

behalf of others." *Id.* (citing Restatement (Second) of Judgments § 36(1), cmt. b (1982)).

In spite of this clear, binding precedent, the R & R, which the district court adopted, applies the rule employed by "those courts that permit wider use of virtual representation," and specifically cited *Tyus v. Schoemehl,* 93 F.3d 449 (8th Cir.1996). J.A. 636. However, as the R & R correctly notes, courts are sharply divided on how to implement virtual representation. In fact, *Tyus* expressly disagrees with our own precedent, citing *Klugh* as placing our Circuit within a group of courts who "would permit a nonparty to be bound by a prior judgment under a theory of virtual representation only in very limited, technical situations." *Tyus,* 93 F.3d at 454. The *Tyus* Court went on to state "[w]e agree with those courts that give wider use to virtual representation. This liberal use better accommodates the competing considerations of judicial economy and due process." *Id.* at 455. Given the existence of binding Circuit precedent to the contrary, following *Tyus* was not a viable option.

■ Applying our much more stringent standard to the facts of this case, we find that identity of parties does not exist. Under our precedent in *Klugh,* there can be no virtual representation where one of the parties to the first suit was not accountable to the nonparties who filed a subsequent suit and where the virtual representative for a nonparty did not have at least the tacit approval of the court. *See* 818 F.2d at 300. The record discloses no point at which the district court in the *McKain* suit provided "tacit approval" to McKain to represent the other employee participants in the Plan. In fact, it discloses exactly the opposite. Long after the district court had already granted summary judgment to McKain on the substantive issues of the case, it denied McKain's request for an injunction to protect the benefits of the other plan participants. Specifically, it noted that "[t]his issue was not addressed by the parties in the post-judgment briefs or in any brief filed prior to the entry of judgment in this case." J.A. 874. In other words, during the substantive portions of the case, the entire focus of the court was on McKain as an individual participant and there was no disclosed relationship in which McKain was accorded authority to appear as a party on behalf of Appellants. Thus, there was no tacit approval.

In apparent recognition that they cannot satisfy the *Klugh* standard, American Bancorporation argues that *Klugh* conflicts with our definition of privity in *Nash,* and points to this court's decision in *McMellon v. United States,* 387 F.3d 329 (4th Cir. 2004) (en banc). In *McMellon,* this court concluded "that when there is an irreconcilable conflict between opinions issued by three-judge panels of this court, the first case to decide the issue is the one that must be followed." *Id.* at 334. However, we find no such irreconcilable conflict here. *Nash* presents a broad definition of the concept of privity, defining it as "merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Nash,* 640 F.2d at 494. (internal quotation marks omitted). *Klugh* simply defines what it means to have a sufficiently close relationship in the context of virtual representation. We see no conflict here.

Finally, we note that the mere fact that Appellants helped to finance McKain's suit is not sufficient, without other facts, to warrant the application of res judicata to this case. *See General Foods Corp. v. Mass. Dept. of Public Health,* 648 F.2d 784, 788 (1st Cir.1981) (noting the general rule that "a non-party is not bound by a

judgment *merely* because he paid the expenses of a litigation").

As such, the district court erred in granting summary judgment on res judicata grounds.

### III.

 American Bancorporation contends that even if this court finds that the application of res judicata was not proper here, this court should still affirm the grant of summary judgment on the basis that collateral estoppel is appropriately applied to Appellants' 20+ claims. Collateral estoppel forecloses the relitigation of an issue of fact or law if certain requirements are met. *Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998). In order to apply the doctrine, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) the determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment was final and valid; and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum. *Id.*

American Bancorporation's argument fails because the issue of whether Appellants are entitled to 20+ benefits was never actually determined. The record is unequivocal in that regard. As an initial matter, we note that the R & R explicitly states that "the issue of whether the participants were entitled to receive 20% + EEC benefits was not directly litigated in the motions for summary judgment in the *McKain* case...." J.A. 634. Further, the district court explicitly noted the narrow nature of the issue decided in the *McKain* order. There, the court noted that:

By stating that collateral estoppel applies as to the "amendment" of the Plan under such Amendments, the Court is referring to the Plan's having satisfied its own written terms with which compliance is required for an amendment to have actually taken place, which issue was specifically reviewed by [the district court] in the *McKain* case.

*Id.* at 158. In other words, the district court did not read the *McKain* order as having actually determined the issue of whether the employees were entitled to 20+ benefits, but instead read it as only finding that the Plan was in fact amended in accordance with its own terms.

A reading of the *McKain* order supports this conclusion. The specific subject of that order was whether the amendments of March and December of 1986 were adopted in accordance with plan documents. Under ERISA, all plans must be established and maintained pursuant to a written instrument, which must describe the formal procedures by which the plan can be amended. 29 U.S.C. § 1102(a)(1), (b)(3) (2000). After noting that McKain had originally maintained that he was entitled to either a 32% or 20+ benefit, the *McKain* court framed the issue as follows:

In the motion for summary judgment, [McKain] contends that the resolutions adopted on March 18, 1986 by the Board of Directors of Wheeling National Bank constitute an amendment to the retirement plan. This amendment provides a benefit equal to 32% of compensation. In the response to the motion for summary judgment, the plaintiffs contend that the 32% benefit plan was never implemented as clarified by the Executive Committee meeting on November 25, 1986.

*Id.* at 799. That issue is exactly what the *McKain* court decided, finding that the Plan was properly amended in March of

1986 to provide 32% benefits, and again in December of 1986 to provide 20% benefits.

*That,* however, is a very different issue from whether or not Appellants are entitled to 20+ benefits because the August 1986 SPD so stated. As such, because this issue was not actually determined, we find that collateral estoppel is not properly applied here.[18]

## IV.

Appellants also argue that the district court erred in dismissing their § 204(h) notice claim on the grounds of res judicata and collateral estoppel. This issue is resolved by our earlier holdings. As an initial matter, we note that because res judicata was not properly applied to this case, it cannot be the basis for dismissal of this claim. Further, we find that collateral estoppel is inapplicable because the issue here is not identical to the issue necessarily determined in the *McKain* matter.[19] As we noted earlier, the issue necessarily determined in the *McKain* matter was whether the amendments to the Plan satisfied the Plan's *own* written terms. Given that the issue asserted here is whether the amendments to the Plan satisfied ERISA's § 204(h) notice requirements, we find that this issue was not necessarily decided in the *McKain* matter.

Thus, we find that the district court erred in barring Appellants' § 204(h) notice claim.

## V.

Appellants next challenge the district court's finding that the Plan Administrator acted reasonably in calculating benefits for the employees. Specifically, Appellants argue (1) that the district court's res judicata ruling had a direct impact on the district court's abuse of discretion analysis; (2) that the district court erred in applying this Circuit's modification of the degree of deference given to Plan Administrators where a conflict of interest is present; and (3) the district court was overly deferential to the Plan Administrator's interpretation of the plan where that interpretation was contrary to the opinions expressed by American Bancorporation's own experts.

Because we find that our earlier res judicata ruling requires that the abuse of discretion inquiry be remanded to the district court, we only address Appellants' first argument.

## A.

A federal court's ability to review a discretionary decision of the administrator of an employee benefits plan is significantly limited. If "the benefit plan gives the administrator or fiduciary discretion-

---

**18.** American Bancorporation's collateral estoppel claims also fail because of the lack of privity discussed in Part II. Although, "[c]ollateral estoppel ordinarily applies only against persons who were parties to the prior suit, because, as a general rule, nonparties will not have had a full and fair opportunity to litigate the issues raised in the previous action," *Virginia Hosp. Ass'n v. Baliles,* 830 F.2d 1308, 1312 (4th Cir.1987), "[u]nder some circumstances, however, nonparties can be precluded from relitigating issues determined in a prior suit." *Id.* One such group of nonparties is those found to have been in privity with a party to the original suit. *See Gross v. Wein-*

garten, 217 F.3d 208, 217 (4th Cir.2000) ("It is an axiom of collateral estoppel ... that the defendants can be bound by the Commission's findings and order only if they were parties, or in privity to a party"); *Comite de Apoyo a los Trabajadores Agricolas v. U.S. Dep't of Labor,* 995 F.2d 510 (4th Cir.1993) ("Nor is Fairview in privity with DOL, such that it would be bound by our judgement as a nonparty."). Because Appellants were not in privity with McKain, they cannot be collaterally estopped from litigating the 20+ issue.

**19.** *See ante* at 654 *note* 18.

ary authority to determine eligibility for benefits or to construe the terms of the plan," a reviewing court may reverse the denial of benefits only upon a finding of abuse of discretion.

*Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir.1999) (citation omitted). As a general matter, "the administrator's decision will not be disturbed if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id.* (internal quotation marks and citation omitted) It is uncontested in this case that the Plan documents grant the Plan Administrator discretionary authority.[20] Therefore we review the Plan Administrator's decisions under an abuse of discretion standard.

### B.

Appellants argue that the application of res judicata to this case substantially impacted the district court's abuse of discretion inquiry. We agree.

■ In *Booth v. Wal–Mart Stores Inc.*, we examined the factors a court should consider in performing the requisite abuse of discretion inquiry, and held that:

> a court may consider, but is not limited to, such factors as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

201 F.3d 335, 342–43 (4th Cir.2000).

By virtue of its ruling that res judicata applied to Appellants' claims that they were entitled to receive 20+ benefits, the district court explicitly refused to consider Appellants' arguments regarding 20+ benefits with regard to factors two, four, and six of the *Booth* analysis. J.A. 643–46. Specifically, with regard to the second element, "the purposes and goals of the plan," the district court refused to consider Appellants' arguments concerning the August 1986 SPD, which Appellants allege provides for 20+ benefits. *Id.* at 643. Similarly, in discussing the fourth factor, "whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan," the district court refused to consider whether the Plan Administrator failed to follow the August 1986 SPD when deciding the participants were not entitled to the return of their contributions. *Id.* at 644. Finally, with regard to the sixth factor, "whether the decision was consistent with the procedural and substantive requirements of ERISA," the district court refused to consider Appellants' argument that by not administering the Plan in accordance with the August 1986 SPD, the Plan Administrator did not discharge his duties in accordance with the governing documents as ERISA requires under 29 U.S.C. § 1104(a)(1)(D).

**20.** "[T]he Plan administrator has the power to construe the Plan and to determine all questions that may arise under the Plan, including all questions relating to the eligibility of Employees to participate in the Plan and the amount of benefit to which any Participant, Beneficiary, spouse or Contingent Annuitant may become entitled. The Plan Administrator's decisions upon all matters within the scope of its authority shall be final." J.A. 266.

Given that the district court's refusal to consider Appellants' 20+ arguments significantly impacted its abuse of discretion analysis, and given that we have found that the application of res judicata to that argument was error, we reverse the district court's ruling that the Plan Administrator did not abuse his discretion in calculating Plan benefits.

### VI.

Therefore, we reverse the district court's grant of summary judgment to American Bancorporation and remand for further proceedings in accordance with this opinion.

*REVERSED AND REMANDED*